UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHARON CHOW,<br>    Plaintiff,<br><br>against<br><br>THE STRIDE RITE CORP. d/b/a<br>TOMMY HILFIGER<br>FOOTWEAR,<br>    Defendant. | Assigned Judge: Judge Robinson<br><br><br>INDEX NO. 05 CV 2417 |

**DEFENDANT'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS PURSUANT TO LR, S.D.N.Y. 56.1**

Pursuant to Fed. R. Civ. P. 56 and LR, S.D.N.Y. 56.1, defendant The Stride Rite Corp., d/b/a Tommy Hilfiger Footwear ("Stride Rite"), submits the following statement of material facts of record as to which Stride Rite contends there are no genuine issues to be tried.

I.    **The parties**.

    1.    Plaintiff Sharon Chow ("Chow") was employed by Tommy Hilfiger Footwear, Inc. ("Tommy Footwear") as a Product Line Manager – Women's Casual in New York, New York, beginning in October 2002. See Affidavit of Denise Lockaby ("Lockaby Aff.") at ¶3; Chow Deposition Transcript attached as Exhibit 1 to the Affidavit of Counsel Authenticating Evidence Relied on in Support of Defendant's Motion for Summary Judgment ("Chow Depo.") at 30. Chow previously had worked for Stride Rite's Keds division in its New York design studio from October 2001 through September 2002. In September 2002, her position, along with that of three other positions in that design studio, was eliminated. See Chow Depo. at 23-27.

2.      Stride Rite is a national marketer and retailer of athletic and casual footwear for children and adults. Stride Rite has its principal place of business in Lexington, Massachusetts. Through various wholly-owned subsidiaries and its Stride Rite children's brand, Stride Rite markets Keds, Grasshoppers, Sperry Top-Sider and Tommy Hilfiger brand footwear. Tommy Footwear is a wholly-owned subsidiary of Stride Rite. See Lockaby Aff. at ¶¶2 and 3; Affidavit of K. Mavourneen ("Bornie") Del Priore ("Del Priore Aff.") at ¶1; Affidavit of Richie Woodworth ("Woodworth Aff.") at ¶1.

II. **Tommy Footwear hires Woodworth as President and begins to reorganize its Product Design and Marketing Department**.

3.      Richie Woodworth ("Woodworth") joined Tommy Footwear as President in July 2003. Tommy Footwear designs, manufacturers and sells shoes bearing the Tommy Hilfiger name under a license from Tommy Hilfiger USA, Inc. ("Tommy USA"). See Woodworth Aff. at ¶1.

4.      In the months after Woodworth became the President of Tommy Footwear, he evaluated all of Tommy Footwear's businesses and departments. One of Tommy Footwear's departments is its Product Design and Marketing Department (the "Product Department"). At the time Woodworth became President, the Product Department consisted of two effectively separate units, one for women's footwear products and the other for men's footwear. The Product Department had a Vice President – Women's Product, Ruthie Davis ("Davis"), and a Vice President – Men's Product, Joseph Frazier, Jr. ("Frazier"). At that time, those two units essentially worked wholly independently of one another. Reporting to Davis for women's products were two Product Line Managers, one of whom was Chow and the other was Angela Son ("Son"). Son held the similar position of Product Line Manager – Women's Athletic, and she and Chow had the same duties as Product Line Managers. There was a single Product Line

Manager for men's product who reported to Frazier.  <u>See</u> Woodworth Aff. at ¶2; Chow Depo. at 34.

5. Woodworth concluded that the Product Department needed to be restructured because of performance issues.  He based that determination on the overall poor performance of the Product Department's products at retail, on problems with the Product Department's internal operations and on its difficulties in communicating with Tommy USA, the licensor.  <u>See</u> Woodworth Aff. at ¶3.

6. As an initial step in resolving the problems that the Product Department faced, Woodworth determined that it was necessary to combine the operations of the women's and men's groups together under one individual rather than to continue with the distinct groups under separate leadership.  Woodworth decided to eliminate the positions of Vice President – Women's Product and Vice President – Men's Product and in their stead to create a single new position of Senior Vice President – Product and Marketing.  That new position would be responsible for all products and for the operation of all facets of Tommy Footwear's women's and men's footwear.  The position of Senior Vice President – Product and Marketing would replace both of those vice president-level positions and represent Tommy Footwear's singular voice to Tommy USA on all products.  <u>See</u> Woodworth Aff. at ¶4.

III. **<u>Tommy Footwear hires Del Priore as Vice President – Product and Marketing</u>**.

7. To begin the restructuring of the Product Department, Tommy Footwear hired K. Mavourneen ("Bornie") Del Priore ("Del Priore") as its Senior Vice President – Product and Marketing.  Del Priore came to Tommy Footwear from a position as Vice President of Product Management for Ralph Lauren Footwear, Inc. ("Lauren Footwear").  She had fourteen years' experience with Lauren Footwear prior to joining Tommy Footwear.  As Senior Vice President –

Product and Marketing, Del Priore replaced both Davis, who had been Vice President – Women's Product, and Frazier, who had filled the Vice President – Men's Product position.  At the time Woodworth hired Del Priore, he was aware that she has three children, all of whom were then aged seven or under.  See Woodworth Aff. at ¶5.  At the time Del Priore became the Senior Vice President – Product and Marketing for Tommy Footwear, her daughters were aged seven, six and two and a half.  She gave birth to all three of her daughters while an employee of Lauren Footwear.  See Del Priore Aff. at ¶2.

8.	In interviewing and hiring Del Priore, Woodworth discussed with her his concerns about the Product Department, his conclusion that it needed to be restructured beyond simply combining the Vice President – Women's Product and Vice President – Men's Product positions into the Senior Vice President – Product and Marketing position and that he envisioned the need for further reorganization in the Product Department.  Woodworth told Del Priore that he wanted one senior person to manage both women's and men's products to enable Tommy Footwear to build a positive relationship with Tommy USA, the licensor to Tommy Footwear of the Tommy Hilfiger name, and also to form an organizational structure with a strategic and tactical focus to create an efficient and effective product process.  Woodworth explained to Del Priore that Tommy Footwear's relationship with Tommy USA had become less than optimal and that he needed to build a solid team structure in the Product Department to rectify its problems.  Woodworth, however, left the determination of the specifics of that further restructuring to Del Priore.  See Woodworth Aff. at ¶6; Del Priore Aff. at ¶3.

9.	When Tommy Footwear hired Del Priore, Chow spoke with Son about whether their positions were in jeopardy.  The fact that Tommy Footwear had hired Del Priore, a new manager, led to that conversation between them.  Davis also had informed Chow that Del Priore

might want to bring in her own people.  See Chow Depo. at 86-87.

IV.    **Del Priore restructures the Product Department
       and creates the Director – Women's Product position**.

10.    Del Priore began work for Tommy Footwear as Senior Vice President – Product and Marketing on May 4, 2004.  Upon joining Tommy Footwear, she evaluated the organization that she inherited for the purpose of determining how to run the women's and men's segments of the Product Department.  Del Priore determined that the Product Department lacked a strategic business orientation and operations/process focus and, as a result, changes were necessary.  She concentrated at that time, however, on the women's product side of the Product Department because women's product made up eighty percent of Tommy Footwear's business and thus warranted immediate attention.  After taking over as Senior Vice President – Product and Marketing, she made a complete evaluation of the women's product segment of the Product Department.  It quickly became clear to her that Davis, who had been the Vice President – Women's Product, had a more design/creativity orientation while Del Priore's focus is on the business strategies and processes necessary to increase profitability.  Del Priore concluded that the Product Department needed to move to a more product management-based approach that included sales and profitability goals as well as product development, and she shifted the focus of the Product Department in that direction.  See Del Priore Aff. at ¶4.

11.    With the elimination of the Vice President – Women's Product position, the positions immediately below Del Priore in the organization when she took over the Product Department were the Product Line Manager – Casual and the Product Line Manager – Sport.  Chow held the position of Product Line Manager - Casual, and Son was the Product Line Manager – Sport.  At the time Del Priore joined Tommy Footwear, Chow was pregnant, and she was aware of that.  Son, the other Product Line Manager, was not pregnant.  During her first few

weeks at Tommy Footwear, Del Priore carefully observed and evaluated the Product Line Managers, Chow and Son, in terms of their skills, experience and job responsibilities.  See Del Priore Aff. at ¶5.

12.     On May 21, Del Priore signed and approved Chow's Request for Leave of Absence form whereby Chow requested a leave of absence for maternity leave.  See Del Priore Aff. at ¶6 and at Ex. 1.

13.     In the position of Senior Vice President – Product and Marketing, Del Priore was the one person in the Product Department responsible for all product management-related issues, including all product development responsibilities, for both women's and men's footwear.  The Product Department is responsible for defining, executing and delivering products that achieve Tommy Footwear's sales and profit margin goals.  She concluded that in that role she would need to create senior-level positions to run the two segments (women's and men's) of the Product Department.  In early June 2004, Del Priore made a recommendation to Woodworth and Stride Rite's Human Resources Services Group to reorganize the Product Department.  She proposed creating a position of director to report immediately to her for women's product and a director for men's product who also would report to her.  In addition, she proposed eliminating the positions of Product Line Manager for both women's and men's products and instead creating new, lower-level administrative positions of Product Coordinators to support the Director – Women's Product.  See Del Priore Aff. at ¶7; Woodworth Aff. at ¶7.  The new Product Coordinators would be at a much lower level than the Product Line Manager positions both in terms of job responsibilities and salary.  The Product Coordinator positions would involve essentially administrative-type work.  Del Priore had concluded that the Product Department's Product Line Managers were performing almost exclusively administrative work

that could be and should be performed by more junior-level employees at a much lower pay rate. See Woodworth Aff. at ¶7.

14. Woodworth approved of Del Priore's recommendations to create the position of Director – Women's Product, to eliminate the two Product Line Manager positions and to create two new administrative positions of Product Coordinator. The reorganization of the Product Department that Del Priore proposed at that time was a continuation of the restructuring that Woodworth had concluded was necessary and that he had initiated in hiring Del Priore as Senior Vice President – Product and Marketing. In approving the proposed restructuring, Woodworth also approved of the decision to terminate the employment of both Product Line Managers for women's product, Chow and Son. Chow's pregnancy played no role in the decisions to eliminate both Product Line Manager positions and to let her and Son go. In fact, Son, whose position also was eliminated and whose employment also was terminated, was not pregnant. See Woodworth Aff. at ¶8; Del Priore Aff. at ¶¶13 and 14.

V. **Del Priore determined that neither Chow nor Son was qualified for the Director – Women's Product position.**

15. Based on her evaluations of both Chow and Son, Del Priore concluded that neither was qualified to fill the new Director – Women's Product position that was necessary for the proper management of the women's product segment of the Product Department. Del Priore determined that neither Chow nor Son, the then-Product Line Managers, was qualified to run a business, the crucial requirement of the new position of Director – Women's Product. The Director – Women's Product would need to meet with and otherwise interact with Tommy USA regarding both products and its approval of such products. In addition, the Director – Women's Product would have to interact with retailers, including dealing at the senior retail manager level, and would make the majority of the Product Department's product presentations to retailers. The

Director – Women's Product also would hold meetings with Tommy Footwear's senior management, with Tommy USA and with retailers.  Overall, the Director – Women's Product would be responsible for creating a profitable product line, for developing product strategy for each selling season and for presenting that strategy to Tommy Footwear's senior-level management.  The duties of the Director – Women's Product position also would entail forecasting, business planning, tracking product flow and formulating decisions for pricing at margin and at weighted margin.  See Del Priore Aff. at ¶8.

16.    Both Chow and Son, in their roles as Product Line Managers, did not interact with Tommy USA as would be necessary for the new Director – Women's Product position.  Rather, their duties and positions were far more administrative and supportive in nature.  Each lacked the fiscal experience, skills and responsibilities to handle the new Director - Women's Product position.  Chow simply did not have the necessary exposure to and experience in formulating business strategies and did not demonstrate in any fashion that she could run the business side of the Product Department's women's footwear segment.  Her experience and skills did not allow her to be responsible for and to conduct the necessary business meetings with Tommy USA's senior personnel or with retailers.  She also did not indicate in any way that she could have advanced to that level.  In addition, Del Priore learned that the senior personnel at Tommy USA did not view either Chow or Son as qualified to engage them in the business-side of the Product Department's functions.  Rather, Tommy USA regarded both Chow and Son as administrative-level employees.  Del Priore concluded that neither Chow nor Son was qualified for the Director - Women's Product position.  That evaluation of Chow and the conclusion that she was not qualified to be the Director – Women's Product was not a criticism of her performance as a Product Line Manager.  Del Priore's conclusion that Chow was not qualified for that new

Director – Women's Product position was based on the expectations for and demands of that new position and on her determination that Chow lacked the skills and abilities for those new job responsibilities.  See Del Priore Aff. at ¶9.  The Product Line Manager positions at Tommy Footwear were administrative, support-oriented positions.  In terms of the required experience, skills and job responsibilities, they were analogous to what are referred to as product coordinator positions elsewhere in the industry.  See Del Priore Aff. at ¶10.

VI. **Del Priore hires a Director – Women's Product and eliminates the two Product Line Manager positions.**

17. As a result of her conclusion that neither Chow nor Son was sufficiently qualified for the new Director – Women's Product position, Del Priore hired Elise Schneider, who previously had worked for her for at Lauren Footwear for four and a half years.  Schneider had been a product manager for Lauren Footwear and was in charge of its Polo Sport line, the largest volume category at Lauren Footwear.  Schneider has the demonstrated experience, skills, business acumen and talent that the new Director – Women's Product position requires and that both Chow and Son lacked.  Of particular importance to Del Priore in deciding to hire Schneider was her knowledge of how to run a business, knowledge that both Chow and Son did not have.  Schneider has the ability to make presentations and to interact as necessary with Tommy USA and also is familiar with so-called retail math such as the pricing of a product, can run "weighted" margins and can control the overall profitability of a business.  While as Product Line Managers Chow and Son performed some costing duties, they could not do so beyond being responsible for the profit margin on only a single item of footwear.  The Director – Women's Product must be able to undertake "weighted" margin analysis and pricing; that is, she must make pricing decisions for margins across an entire product line so that the ultimate "weighted" margin of all sales meets the Product Department's goals.  The Director – Women's Product also

negotiates the pricing of the product line and works with both Stride Rite's costing manager and the costing managers of the factories in China that actually manufacture the footwear.  See Del Priore Aff. at ¶11.

18. Schneider accepted the position of Director – Women's Product with Tommy Footwear in approximately the second week of June 2004, and began work in the Product Department on June 28, 2004.  Del Priore issued a memorandum, dated June 21, 2004, announcing to the Product Department (i) Schneider's hiring, (ii) the elimination of the Product Line Manager positions and (iii) Chow's and Son's separations from Tommy Footwear.  In that position as Director – Women's Product, Schneider is responsible for all women's product.  See Del Priore Aff. at ¶12 and at Ex. 2.

19. The decision to hire Schneider for the Director – Women's Product position resulted in the elimination of the two Product Line Manager positions that Chow and Son held and caused the terminations of their employment.  Chow's pregnancy played no role in that decision.  Del Priore then created two new Product Coordinator positions to work under and to report directly to Schneider.  Those two Product Coordinator positions are at the one to two-year experience level and perform administrative and support-related job tasks.  Given the lower-level of experience and the administrative tasks that the Product Coordinators perform, the salary level for the Product Coordinator position is approximately only half or less than half of what the Product Line Managers had made for performing many of the same duties.  Tommy Footwear did not replace Chow with another employee; rather her position as Product Line Manager was eliminated.  Schneider was responsible for hiring the two new Product Coordinators.  The first Product Coordinator began work in mid-July 2004, and the second one started in approximately mid-to-late August 2004.  See Del Priore Aff. at ¶13; Defendant's Answers to Plaintiff's First

Set of Interrogatories, Answer. No. 9, attached as Ex. 2 to the Affidavit of Counsel Authenticating Evidence Relied on in Support of Defendant's Motion for Summary Judgment.

VII. **Tommy Footwear terminates both Chow's and Son's employment at the same time**.

20. Given the reorganization and the elimination of the Product Line Manager positions, Del Priore met with Chow and Son on June 17, 2004 and informed them of the terminations of their employment. She told Chow that she had made a decision to create a more senior position of Director – Women's Product and to eliminate the two Product Line Manager positions. Del Priore also told Chow that she wanted to make sure that Chow was fully covered in terms of maternity leave benefits and offered assistance in finding her another job through her contacts in the industry. At no time during that meeting did Chow in any way indicate that she believed that her termination was a result of any discrimination due to her pregnancy or any other factor. Son, whose Product Line Manager position also was eliminated, and who was informed of the termination of her employment at the same time as Chow, was not pregnant. See Del Priore Aff. at ¶14; Chow Depo. at 89-92.

21. Chow concedes that Son was not pregnant at the time Son's position was eliminated, and her employment was terminated along with Chow's. See Chow Depo. at 93.

22. At the time Del Priore eliminated the Product Line Manager positions and terminated Chow's and Son's employment, the Product Department had another pregnant employee, Moon (Toni) Mun ("Mun"), a women's athletic footwear designer, whose employment was not terminated. At that time Mun was pregnant and reported directly to Del Priore. In August 2004, Mun's reporting assignment changed, and she later went on maternity leave and subsequently returned to work at Tommy Footwear. See Del Priore Aff. at ¶17.

23.     After the birth of her child, Chow did not seek employment except for performing about fifteen or sixteen hours of consulting work for the Gina Group in October 2004.  See Chow Depo. at 7-9 and 12-13.  Chow did not seek further employment because she hasn't "quite had the time or the energy. . ." and has "been forcing on taking care of [her] child."  See Chow Depo. at 13.  Chow has chosen to stay at home since the birth of her first child except for her brief employment with the Gina Group.  See Chow Depo. at 13.

VIII.   **Stride Rite, despite the reorganization that eliminated Chow's Product Line Manager position and caused the termination of her employment, ensured that Chow still received all maternity leave/ short-term disability benefits that she would have received as an employee**.

24.     Stride Rite's maternity leave policy provides that Stride Rite will provide paid maternity leave under its short-term disability policy.  Stride Rite provides eight weeks of paid maternity leave with a minimum of six weeks to be paid after delivery.  The short-term disability policy has a seven-day elimination period.  Maternity leave begins on the first day that short-term disability benefits are paid and extends for a full eight weeks or a minimum of six weeks after delivery.  See Lockaby Aff. at ¶6 and at Exs. 1 and 2.

25.     On June 17, 2004, Denise Lockaby ("Lockaby"), Stride Rite's Director of Professional Development, traveled to New York City to meet with Chow and Son to conduct their exit interviews.  In that meeting, Lockaby informed Chow that, despite the termination of her employment, Stride Rite still would provide her with the full maternity leave benefits and short-term disability payments available to her under its maternity leave policy.  See Lockaby Aff. at ¶5.  Lockaby informed Chow that, to ensure she received full maternity leave benefits despite the termination of her employment, the effective date of the termination of her employment would be delayed and determined based on the date of her delivery of her child.  During the exit interview, Lockaby provided Chow with a letter dated June 16, 2004 that

summarized for Chow the benefits that she would receive as a result of her separation from Stride Rite.  <u>See</u> Lockaby Aff. at ¶7 and Ex. at 3.

26.	Stride Rite placed Chow on short-term disability/family-medical leave on June 21, 2004.  Chow received one hundred percent of her salary, after a seven-day elimination period, for eight weeks.  Stride Rite determined the actual date of the termination of Chow's employment based on the date of the delivery of her child on July 10, 2004.  Based on that delivery date, the termination of Chow's employment was effective on August 23, 2004.  By Lockaby's letter dated July 30, 2004 to Chow, Stride Rite advised Chow of the termination of her employment effective August 23, 2004 (six weeks after her child was born) to ensure that Chow received all benefits under Stride Rite's short-term disability and maternity leave policies.  <u>See</u> Lockaby Aff. at ¶8 and at Ex. 4.

27.	Stride Rite paid Chow eight weeks of short-term disability benefits, that being all benefits payable under Stride Rite's short-term disability and maternity leave policies.  In light of the elimination of Chow's Product Line Manager position and the termination of her employment, Stride Rite had no obligation to extend the effective date of her termination to August 23, 2004, but it did so as a courtesy to ensure that she received full maternity leave/short-term disability benefits.  <u>See</u> Lockaby Aff. at ¶9.

28.	Chow admits that Stride Rite established August 23, 2004 as the effective date of her termination so as to maximize Chow's paid maternity leave benefits.  Chow also admits that she received all of the paid maternity leave that she would have received had her position not been eliminated.  She further concedes that she was paid all of the maternity leave pay that she would have been entitled to as a Stride Rite employee and that to qualify for short-term disability benefits she had to be a Stride Rite employee.  Stride Rite established the separation date of

August 23, 2004, to keep her as a Stride Rite employee so that she could collect short-term disability benefits. Had the effective date of her separation been in June 2004 when she actually left the company, she would not have been eligible for short-term disability coverage. See Chow Depo. at 99-101.

IX. **Chow has no admissible evidence that Tommy Footwear eliminated the positions of Product Line Manager and terminated her employment because of her pregnancy**.

29.    Chow attributes the elimination of her position as Product Line Manager and the termination of her employment to her pregnancy because, in her view, after Del Priore was appointed Senior Vice President – Product and Marketing, Del Priore did not discuss with Chow how Tommy Footwear was going to fill Chow's position while Chow was on maternity leave. See Chow Depo. at 94-95. In addition, Chow bases her belief that Stride Rite terminated her employment and eliminated her position due to her pregnancy on the fact that Davis, when she was Chow's supervisor, had asked Chow a number of times whether Chow intended to return from maternity leave. See Chow Depo. at 111-13. Chow's only other reason that led her to "possibly" believe that Stride Rite eliminated her position as a Product Line Manager and terminated her employment because of her pregnancy was her belief that Yoriko Powell, who never was Chow's supervisor, did not think favorably of someone staying with the company who was pregnant or had children. See Chow Depo. at 121-22. Chow based that conclusion only on Powell's work ethic, the fact that Powell did not have children and Chow's belief that Powell didn't like children. See Chow Depo. at 124. Chow admits, however, that she did not report to Powell. See Chow Depo. at 128.[1]

---

[1]    Stride Rite does not concede that the statements in paragraph 28 are true. Rather, Stride Rite considers it undisputed for purposes of summary judgment that the statements in paragraph 28 constitute the only grounds Chow has proffered to support her claim that Stride Rite terminated her employment *because of* her pregnancy.

30. It is undisputed, despite Chow's surmise and conjecture, that neither Davis nor Powell played any role in the decisions to restructure the Product Department, to eliminate the two Product Line Manager positions or to terminate the employment of Chow and Son, who was not pregnant, at the same time. See Del Priore Aff. at ¶15; Woodworth Aff. at ¶9. Davis, who had been the Vice President – Women's Product before Del Priore became Senior Vice President – Product and Marketing, played no role at all in the decisions to restructure the Product Department, to create the Director – Women's Product position, to eliminate the two positions of Product Line Manager and to terminate Chow's (and Son's) employment. At the time Del Priore made those decisions, Davis had no input whatsoever into the functioning of the Product Department. From the time Del Priore began work at Tommy Footwear as Senior Vice President – Product and Marketing, Davis had absolutely no further supervisory authority over Chow. Similarly, Chow's surmise in her deposition that Powell may have played some role in the decision to terminate her employment is simply and completely inaccurate and has no factual basis. Powell, who was a Vice President for Tommy Footwear also played no role at all in the above decisions, had no input into the decision to terminate Chow's employment and had no supervisory authority over Chow. Del Priore alone made those decisions with the approval of Woodworth and Stride Rite's Human Resources Services Group. See Del Priore Aff. at ¶15; Woodworth Aff. at ¶9.

31. Chow admits that, although Son's position was being eliminated and Son's employment was being terminated at the same time, Del Priore did not terminate Son because of pregnancy because Son was not pregnant. See Chow Depo. at 115.

32. Chow concedes that she had no reason to believe that Del Priore, the decision maker, was hostile to people who were married or had children. Chow admits that Del Priore

was both married and had children.  See Chow Depo. at 134.  In fact, Del Priore shared with Chow Del Priore's experiences about her pregnancies and about having three children while working and discussed having a family and working.  On June 17, 2004, Del Priore also informed Chow of Del Priore's contacts at Nine West and about possible employment for Chow there.  On another occasion, Del Priore and Chow discussed how Del Priore always had both a career and brought up three children.  See Chow Depo. at 109-10.

X. **After reorganizing the women's side of the Product Department, Del Priore conducted a similar restructuring of the men's portion of the Product Department.**

33.     Del Priore subsequently carried out a similar reorganization of the men's footwear side of the Product Department.  Prior to the time she joined Tommy Footwear, the men's side of the Product Department had a Vice President – Men's Product, a single Product Line Manager and a Product Coordinator, all of whom were located in Lexington, Massachusetts.  The Vice President – Men's Product position was eliminated when Del Priore became the Senior Vice President – Product and Marketing.  In November 2004, Del Priore created and filled a new Director – Men's Product position that is identical to the Director – Women's Product position.  Unlike the previous position of Vice President – Men's Product which was based at Stride Rite's headquarters in Lexington, Massachusetts, the Director – Men's Product now works in New York City along with the rest of the Product Department.  Following the reorganization, all men's footwear design and product management is now located in New York.  The individual who had held the Product Line Manager position in the men's footwear side of the Product Department left voluntarily, and thus that position was eliminated as well as part of the continued reorganization.  The existing Product Coordinator resigned from Tommy Footwear in January 2005, and Tommy Footwear hired a new Product Coordinator in February 2005.  After the reorganization, the men's footwear portion of the Product Department now mirrors the women's

side except that it has only one Product Coordinator.  Del Priore reorganized the men's footwear portion of the Product Department several months after the restructuring on the women's side because the women's footwear segment represented approximately eighty percent of the Product Department's revenues and thus demanded more immediate attention.  See Del Priore Aff. at ¶16.

IX.     **The EEOC dismissed Chow's Charge of Discrimination**.

34.     On December 6, 2004, the U.S. Equal Employment Opportunity Commission dismissed Chow's charge of discrimination against Stride Rite.  See Affidavit of Counsel Authenticating Evidence in Support of Defendant's Motion for Summary Judgment at Ex. 3.

Respectfully submitted,

MENARD, MURPHY & WALSH LLP

By:  s/ John E. Coyne
John E. Coyne (JC-7458)
Admitted *Pro Hac Vice*
60 State Street, 34th Floor
Boston, Massachusetts  02109
(617) 832-2500
Attorneys for Defendant

REAVIS PARENT LEHRER LLP

By:  s/ Laurie S. Leonard
Laurie S. Leonard (LL-8401)
41 Madison Avenue, 41st Floor
New York, NY  10010
(212) 763-4100
Attorneys for Defendant
New York, NY  10010
(212)  763-4100

Dated:  June 9, 2006