UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARON CHOW,

Plaintiff,

-against-

THE STRIDE RITE CORP. d/b/a
TOMMY HILFIGER FOOTWEAR,

Defendant.

**MEMORANDUM OPINION
AND ORDER**

05 Civ. 02417 (PGG)

PAUL G. GARDEPHE, U.S.D.J.

   In this action, Plaintiff Sharon Chow claims that Defendant Stride Rite Corp. (referred to herein as "Tommy Footwear") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (hereafter, "Title VII"), and the New York State Human Rights Law, New York Executive Law § 296 (hereafter, "NYSHRL") by terminating her employment because she was pregnant. (Cmplt. ¶¶ 10-30) She also claims that she had a contractual right to be placed on family-medical leave and to return to Tommy Footwear after her leave was over, and asserts that the termination of her employment constituted a breach of this alleged contractual obligation. (Cmplt. ¶¶ 31-33; Pltf. Br. at 8-9) Tommy Footwear has moved for summary judgment with respect to all of Chow's claims. For the reasons stated below, Tommy Footwear's motion for summary judgment (Docket No. 9) is GRANTED.

## DISCUSSION

   Summary judgment is warranted if the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary

judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir.2001).

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat summary judgment. Gross v. Nat'l Broadcasting Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002); see also Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); Meiri v. Dacon, 759 F.3d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

The Court is mindful that "direct evidence of . . . [discriminatory] intent will only rarely be available, . . . [so] 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb, 521 F.3d at 137.  However, the Court must also "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

When deciding summary judgment motions in Title VII employment discrimination cases, courts apply the three-step burden shifting analysis enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973).  See Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995).[1]  The first step is for the plaintiff to "establish a prima facie case of pregnancy discrimination . . . by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee."  Id.  "Alternatively, a plaintiff may satisfy the fourth requirement . . . by showing that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination."  Id.  The plaintiff's burden at this is stage is "de minimis."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

_____

[1]  The same analysis applies under both federal and state law.  Quaratino, 71 F.3d at 63; see also Weinstock v. Columbia University, 224 F.3d 33, 42 n.1 (2d Cir. 2000); Calabro v. Westchester BMW, Inc., 398 F. Supp. 2d 281, 294-95 (S.D.N.Y. 2005) (applying same analysis to pregnancy discrimination claims under federal and state law).

If the plaintiff succeeds in "demonstrat[ing] a prima facie case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee." Quaratino, 71 F.3d at 64. If the defendant does so, the plaintiff must offer evidence from which a jury could find "that the employer's reason was merely a pretext for pregnancy discrimination." Id. The plaintiff must offer evidence showing both that the employer's proffered reason was "false and that discrimination was the real reason" for the employer's action. Id. (emphasis in original).

A.    **FACTS**

Chow was employed by Tommy Footwear as the Product Line Manager – Women's Casual from October 2002 through August 23, 2004. (Def. Rule 56.1 Stat. ¶¶ 1, 26)[2] She was one of two Product Line Managers in the Women's Product Design and Marketing Department; the other was Angela Son. (Id. ¶ 4) Both Women's Product Line Managers reported to Ruthie Davis, the Vice President – Women's Product, until May 4, 2004, when Davis's position was eliminated and Bornie Del Priore took over Davis's responsibilities (and responsibility for the Men's line) as Senior Vice President – Product and Marketing. (Id. ¶¶ 4-10) Chow and Son, the two Women's Product Line Managers, began reporting to Del Priore at that time. (Id. ¶ 11)

---

[2] Unless otherwise noted, the facts stated in Defendant's Rule 56.1 Statement are admitted in the corresponding paragraphs of Plaintiff's Rule 56.1 Reply. Plaintiff neither admitted nor denied a number of statements of fact listed in Defendant's Rule 56.1 Statement, on the ground that she did not possess and was not able to obtain the knowledge or information required to admit or deny the statements. See, e.g., Pltf. Rule 56.1 Reply ¶¶ 3-7. Under S.D.N.Y. Local Rules 56.1(c) and 56.1(d), the Court will deem these statements admitted for purposes of the summary judgment motion because Chow did not controvert them by citing admissible evidence.

Chow was pregnant at the time Del Priore started, and submitted a request for maternity leave that Del Priore approved on May 21, 2004.  (Id. ¶¶ 11-12)  On June 17, 2004, the second-to-last business day before Chow's maternity leave was to begin, Del Priore met with Chow and Son (who was not pregnant) and told them that the Product Line Manager positions were going to be eliminated and their employment terminated.  (Id. ¶¶ 20-21, 26)  The same day, Denise Lockaby, Director of Professional Development, met with Chow to conduct her exit interview and informed her that her official termination date would be delayed until after she received the full maternity leave she had been scheduled to take.  (Id. ¶ 25)  Chow received the same maternity benefits she would have received had Del Priore not decided to terminate her employment, and she technically remained employed by Tommy Footwear until August 23, 2004 (the last day of her scheduled leave).  (Id. ¶¶ 26-28)

Del Priore made the decision to eliminate the Product Manager positions with the approval of Richie Woodworth, the President of Tommy Footwear, and the Human Resources Services Group.  (Id. ¶¶ 3, 14, 30)  Del Priore made the decision as part of a reorganization of the Product Design and Marketing department, which Woodworth had started by creating Del Priore's Senior Vice President position.  (Id. ¶¶ 6-8)  The remainder of the restructuring was left to Del Priore to implement.  (Id. ¶¶ 8, 10)  She determined that the three Product Line Manager positions (two on the Women's side, and one on the Men's side) should be eliminated, and that their responsibilities should be divided between two new, more senior Director's positions – one for Women and one for Men – each of which would be supported by one or two administrative Product Coordinator positions.  (Id. ¶ 13)  There is no evidence that Chow expressed

5

interest in either of the new positions, and Chow concedes that she "has chosen to stay at home since the birth of her first child except for" performing a brief consulting job.  (Id. ¶ 23)

Del Priore had three children aged seven or younger at the time she decided to eliminate the Product Line Manager positions, and Chow does not contend that Del Priore "was hostile to people who were married or had children."  (Id. ¶¶ 7, 32) Chow does assert, and Tommy Footwear does not contest, that at unspecified times prior to her termination, other high-level employees had made comments relating to children or pregnancy.  Specifically, after being informed of Chow's pregnancy, Davis – Chow's former supervisor – asked Chow repeatedly whether she intended to return to work and stated that she would not return to work if she were Chow.  (July 8, 2006 Affidavit of Sharon Chow ¶¶ 6, 9)  Davis also attributed her own professional success to the fact that she had not had children and expressed a preference for working with young women. (Id.; see also Pltf. Rule 56.1 Reply ¶¶ 2, 3)  Another Vice President, Yoriko Powell, told Chow that she did not have children and did not like children.  (Chow Aff. ¶ 6; Pltf. Rule 56.1 Stat. ¶ 4)  Davis and Powell did not have any input into the decision to terminate Chow's employment.  (Def. Rule 56.1 Stat. ¶ 30)

**B.     CHOW'S PRIMA FACIE CASE OF DISCRIMINATION**

Tommy Footwear does not dispute that Chow has established the first and third elements of a prima facie case: Chow was a member of a protected class, i.e., pregnant women, and she was discharged.  However, Tommy Footwear argues that Chow cannot establish the second element of her prima facie case because she was not qualified for the new Director position.  It further argues that she cannot establish the fourth element of her prima facie case because her former position was not filled and there are

6

no other circumstances giving rise to an inference of discrimination.  (Def. Br. at 6-11)

Given that Chow's burden at this stage is "de minimis," Beyer, 524 F.3d at 163, the Court

concludes that Chow has established a weak prima facie case.

    **1.**       **Whether Chow Was Qualified For Her Position**

         To establish the second element of her prima facie case, Chow must show

that she "satisfactorily performed the duties required by the position" at the time her

employment was terminated.  Quaratino, 71 F.3d at 64.  Tommy Footwear does not

dispute that Chow was qualified for the Product Line Manager position that she held at

the time her employment was terminated.  Instead, it argues that Chow must show that

she was qualified for the new Director position that Del Priore intended to create, and that

she cannot do so.  (Def. Br. at 6-7)  This argument fails for two reasons.

         First, Tommy Footwear cites one case in support of its argument that

Chow must show that she was qualified for the new Director position, rather than the

position she held at the time her employment was terminated.  However, that decision,

Foster v. Livingston-Wyoming ARC, No. 02-Civ.-6597, 2004 WL 1884485 (W.D.N.Y.

Aug. 23, 2004), does not support Tommy Footwear's argument.  In Foster, the issue was

whether the plaintiff had stated a prima facie case with respect to two gender

discrimination claims, the first based on the defendant's termination of her employment

after her position was eliminated, and the second based on the defendant's failure to hire

her for a new position.  Id. at *3.  With respect to the first claim – which is the equivalent

of the claim Chow makes here – the court did not hold that the plaintiff was required to

show that she was qualified for the new position; instead, it assumed arguendo that she

had established the second element of her prima facie case.  Id.  Therefore, the Foster

decision does not provide any guidance as to whether Chow must show that she was qualified for one of the new positions.  And there is at least one similar case where the court considered whether the plaintiff was qualified for the position that had been eliminated in determining whether she had established the second element of her prima facie case.  See Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 516 (S.D.N.Y. 2003) (parties did not dispute that relevant question was whether plaintiff was qualified for the position that had been eliminated).  There is no dispute that Chow was qualified for the position she held when her employment was terminated.

Second, even assuming that Chow must show she was qualified for one of the new positions, Tommy Footwear's argument fails because a jury could find that Chow was qualified for the new Product Coordinator position.  As discussed below (see infra pp. 12-13), the evidence would permit a reasonable jury to conclude that the Product Coordinator position was essentially a replacement for the Product Line Manager position.  Tommy Footwear's only argument as to why Chow cannot show that she was qualified for the Product Coordinator position is that it was a lower level position that required less experience and offered substantially less pay.  (Def. Br. at 7 n.4)  However, the fact that Chow was arguably overqualified for the Product Coordinator position will not defeat her prima facie case.  Sandaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 582 (E.D.N.Y. 2006) (plaintiff established prima facie case of discrimination despite acknowledging that he was likely over-qualified for jobs at issue).

Because Chow was undisputedly qualified for the position she held at the time of her termination and also for the Product Coordinator position, Chow has established the second element of her prima facie case.

**2.      Whether The Circumstances Give Rise
To An Inference Of Discrimination**

Chow can establish the fourth element of her prima case in one of two ways:  by showing that her position remained open and was filled by an employee who was not pregnant, or by showing that the circumstances otherwise give rise to an inference of discrimination.  <u>Quaratino</u>, 71 F.3d at 64.  Tommy Footwear argues that Chow cannot show that her position remained open because it was eliminated and neither of the new positions can be considered a replacement.  (Def. Br. 8-11)  Tommy Footwear also argues that there is no other basis from which a jury could infer discriminatory intent.  (<u>Id.</u>)  Chow responds that the following facts give rise to an inference of discrimination:  (1) she was fired shortly before her maternity leave was to begin; (2) she was "replaced by a single, childless woman"; and (3) there was an "anti-children bias at the company."  (Pltf. Br. at 4-8)  Chow's evidence with respect to the alleged "anti-children bias" is not probative of discriminatory intent and does not support an inference that her termination was discriminatory.  However, her evidence with respect to the timing of her leave and the assumption of her duties by a non-pregnant employee is sufficient – although barely sufficient – to establish the fourth element of her prima facie case.

**a.      <u>The Timing Of Chow's Termination</u>**

Courts have held that "temporal proximity between an employee's request for maternity leave and her termination is sufficient to establish an inference of discrimination" at the prima facie stage.  <u>Pellegrino v. Cty. of Orange</u>, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004).  The amount of time between Chow's request for maternity

leave and the date she was informed of her termination – approximately four weeks[3] – is short enough to establish the fourth element of Chow's prima facie case.  See Flores v. Buy Buy Baby, Inc., 118 F. Supp. 2d 425, 430-431 (S.D.N.Y. 2000) (three or four month gap between plaintiff's announcement of her intention to take maternity leave and plaintiff's termination was "adequate to raise an inference of discrimination" at the prima facie stage); see also Pellegrino, 313 F. Supp. 2d at 315 (fourth element satisfied where the employee was terminated approximately three weeks after requesting additional leave due to pregnancy); Hill v. Dale Electronics Corp., No. 03-Civ.-5907(MBM), 2004 WL 2937832, at *2 (S.D.N.Y. Dec. 19, 2004) (three week gap between announcement of pregnancy and termination of employment was sufficient to satisfy fourth element of prima facie case).

However, the temporal proximity here can give rise to at most a weak inference of discrimination, because Tommy Footwear has offered undisputed evidence that this proximity can also be explained by the fact that Del Priore arrived with a mandate to reorganize the Product Department.  See Foster, 2004 WL 1884485, at *3 (finding that plaintiff had not made out prima facie case based on temporal proximity where timing could be explained by arrival of new executive who embarked on a reorganization); Del Priore Aff. ¶¶ 3-13, 16; Woodworth Aff. ¶¶ 2-8.

---

[3]  Del Priore had learned of Chow's request for leave by May 21, 2004, when she signed the form approving Chow's request.  (Del Priore Aff. Ex. 1)  Chow's leave began on June 21, 2004.  (Id.)

     b.        **Evidence That Chow's Duties Were**
                      **<u>Assumed By An Employee Who Was Not Pregnant</u>**

Chow can also raise an inference of discrimination at the prima facie stage by offering evidence that her position was filled by someone who was not pregnant. <u>Quaratino</u>, 71 F.3d at 64; <u>see also, e.g.</u>, <u>Campbell v. Home Depot U.S.A., Inc.</u>, No. 03-Civ.-1421(KMK), 2006 WL 839001, at *8 (S.D.N.Y. March 30, 2006) (holding that plaintiff had not met the fourth element of the prima facie case in part because she "failed to submit any admissible evidence regarding whether her position remained open and was ultimately filled by a non-pregnant employee").

Tommy Footwear argues that Chow cannot make this showing because her position was eliminated, and thus was not filled at all.  (Def. Br. at 8-9)  However, a jury could reasonably find that either the Director or Product Coordinator position replaced Chow's Product Line Manager position.

As to the Director position, Chow has offered evidence that when Del Priore told Chow that her position was being eliminated, Del Priore explained that the two Product Line Managers would be replaced by a new Director.  (Chow Dep. 89:19-22, 91:2-11)  Del Priore also stated in a memo circulated to staff that the Product Line Manager positions were being eliminated "[b]ased on" the creation of the Director position.  (Del Priore Aff. Ex. 2)  In light of Del Priore's own explanation of the relationship between the Director and Product Line Manager positions, a jury could reasonably infer that the Director position was a replacement for the Product Line

Manager positions.  In fact, Tommy Footwear does not argue that the Director position was not a replacement for the Product Line Manager position. [4]

There is also evidence from which a jury could infer that the Product Coordinator positions replaced the Product Line Manager positions.  The testimony of Tommy Footwear's witnesses suggests that most of the Product Line Manager's work was to be handled by the new Product Coordinators.  Del Priore testified that "[i]n terms of the required experience, skills and job responsibilities," the Product Line Manager positions "were analogous to what are referred to as product coordinator positions elsewhere in the industry."  (Del Priore Aff. ¶ 10)  She further testified that the "Product Coordinator" positions she created required the performance of "many of the same duties" as the Product Line Manager position.  (Id. ¶ 13)  Richie Woodworth, Del Priore's supervisor, similarly testified that the reason for creating the new Product Coordinator positions was that lower-level employees could replace the Product Line Managers, who were not actually performing higher-level work:  "The Product Coordinator positions would involve essentially administrative-type work.  Ms. Del Priore had concluded that the Product Department's Product Line Managers were performing almost exclusively administrative work that could be and should be

---

[4]  There is evidence in the record, however, suggesting that the Director position was not a replacement for the Product Line Manager position.  For example, Tommy Footwear offered evidence that the Director position requires skills that Chow would not have developed in the Product Line Manager position.  (See Del Priore Aff. ¶¶ 8-9)  As discussed below, there is also evidence that the Product Coordinator position replaced the Product Line Manager position, which undermines any inference that the Director position replaced the Product Line Manager position.  However, this evidence at best creates a factual dispute as to whether the Product Line Manager position was replaced, and, if so, what position replaced it.

performed by more junior-level employees at a much lower pay rate.  Thus, she also proposed the elimination of those two Product Line Manager positions." (Woodworth Aff. ¶ 7)

Tommy Footwear argues that the Product Coordinator positions cannot be considered replacements for the Product Line Manager positions because they required only one or two years of experience, "required largely administrative tasks," and offered at most half the salary.  (Def. Br. at 8; see also id. at 7 n.4 (citing Woodworth's statement that "the new Product Coordinators would be at a much lower level than the Product Line Manager positions both in terms of job responsibilities and salary")).  However, based on the evidence cited above, a jury could conclude that the Product Coordinator's job responsibilities were not substantially different from the Product Line Managers' responsibilities.  The difference in salary, standing alone, is not a sufficient basis to find as a matter of law that the Product Coordinator position did not replace the Product Line Manager position.  See Kerzer v. Kingly Mfg., 156 F.3d 396, 402 (2d Cir. 1998) (finding genuine factual dispute as to whether plaintiff's position was replaced in case where evidence before the trial court, as reported in Kerzer v. Kingly Mfg., No. 95-Civ.-1082(CSH), 1997 WL 749379, at *3 (S.D.N.Y. Dec. 4, 1997), was that the new position's salary was less than 60% of the old position's salary); Quaratino, 71 F.3d at 64-65 (agreeing that jury should have decided replacement issue where employer offered evidence that plaintiff's "job was eliminated due to a department-wide reorganization and was combined into a higher level managerial position," and that the alleged replacement position included responsibility for "a substantial additional task" and had a salary 20% higher than plaintiff's).

It is not enough, of course, for Chow to offer evidence from which a jury could find that she was replaced by another employee.  She must also offer evidence from which a jury could find that the employee who filled the position was not pregnant.  Chow has no offered no evidence concerning the employees who filled the new Product Coordinator positions, and the Court's review of the summary judgment record has revealed no such evidence.  Further, Chow has offered only scant evidence – in the form of an e-mail from Tommy Footwear's counsel to her counsel (Chow Ex. G) – concerning the woman who was selected for the Director position, Elise Schneider.[5]  The e-mail states that Schneider "married in [S]eptember 2005" and "ha[d] no children" as of April 2006 (id.), but does not directly address whether Schneider was pregnant in June 2004.  Nonetheless, the e-mail provides some basis from which a jury could infer that Schneider was not pregnant in June 2004.  In sum, Chow's evidence concerning the new Director position provides only minimal additional support for the fourth element of her prima facie case.

### c.  Evidence Of "Anti-Children" Bias

To show that the circumstances of her termination give rise to an inference of discrimination, Chow also relies heavily on comments and questions by Davis, her former supervisor, and Yoriko Powell, another Vice President at Tommy Footwear, as well as evidence concerning the alleged lack of mothers working in the Product Department.  (Pltf. Br. at 5)  Specifically, she points to:  (1) Powell's statement that she did not have children and did not like children (Chow Aff. ¶ 6; Pltf. Rule 56.1 Stat. ¶ 4);

---

[5]  Because Tommy Footwear has not challenged the admissibility of this e-mail, the Court will assume that it is admissible for purposes of this motion.

(2) statements by Davis attributing her own professional success to the fact that she had not had children and expressing a preference for working with young women (Chow Aff. ¶¶ 6, 9; see also Pltf. Rule 56.1 Stat. ¶¶ 2, 3); (3) Davis's asking Chow "[a]bout a dozen" times whether she intended to return to work after her child was born, and stating "multiple times" that "If I were you, I wouldn't come back" (Chow Aff. ¶¶ 6, 9; Chow Dep. 130:7-22); and (4) the fact that none of the other employees in the department had children until Del Priore's arrival.  (Chow Aff. ¶ 7)

This evidence is not probative of discriminatory intent, however, because it does not relate to the intent of Del Priore, who made the decision to terminate Chow's employment. The Second Circuit has recognized that "all comments pertaining to a protected class are not equally probative of discrimination." Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007).  "The relevance of discrimination-related remarks . . . depend[s] . . . on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." Id. at 116 (emphasis added). The undisputed evidence is that Del Priore made the decision to eliminate Chow's position and terminate her employment, with the approval of Woodworth and the Human Resources Service Group.  (Del Priore Aff. ¶¶ 13-15; Woodworth Aff. ¶¶ 8-9)  Del Priore and Woodworth have also offered undisputed testimony that the decision to terminate Chow's employment was not influenced in any way by Powell or Davis.[6]  (Del Priore Aff. ¶ 15; Woodworth Aff. ¶ 9)  Thus, Chow's

---

[6] Chow's speculation that Davis or Powell may have influenced Del Priore's decision (Pltf. Br. at 5) is not sufficient to create a genuine issue of material fact.  See, e.g., Conroy v. New York State Dep't of Correctional Servs., 333 F.3d 88, 94 (2d Cir. 2003)

evidence concerning Davis's and Powell's remarks, and the composition of the product department before Del Priore's arrival, is not probative of discriminatory intent. See Tomassi, 478 F.3d at 115 (observing that "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark").[7]

\*      \*      \*

Chow has offered sufficient evidence to meet her "de minimis" burden of establishing a prima facie case of discrimination. However, it is a weak case, based solely on: (1) the proximity between Chow's request for maternity leave and Del Priore's elimination of Chow's position; and (2) the minimal evidence from which a jury could infer that Chow's responsibilities were assumed by a woman who was not pregnant.

_____

("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").

[7] Even if Powell or Davis had participated in or influenced the decision to terminate Chow's employment, their alleged remarks do not, on their face, suggest that they held any bias concerning pregnant employees or working mothers, because their alleged remarks "show no presumption . . . about how . . . women or mothers in general will or should behave." Infante v. Ambac Financial Group, No. 03-Civ.-8880(KMW), 2006 WL 44172, at *8 (S.D.N.Y. Jan. 5, 2006). Chow's subjective impression – that Powell's and Davis's alleged comments about their personal choices and views about children reflect beliefs about how other women would or should behave – is not evidence of discriminatory bias. See Littman v. Firestone Tire & Rubber Co., 709 F. Supp. 461, 466 (S.D.N.Y. 1989) (plaintiff's "subjective impressions" that he was discriminated against were not sufficient to defeat summary judgment); see also Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 65 (2d Cir. 2003) (where decisionmaker's remark or conduct is facially neutral, the court should not infer discriminatory intent, because "[c]hoosing one explanation over another without more evidence is a matter of speculation"); Bickerstaff v. Vassar College, 196 F.3d 435, 338 (2d Cir. 1999) (instructing courts to "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture").

**C.   CHOW HAS FAILED TO OFFER EVIDENCE
FROM WHICH A JURY COULD CONCLUDE
THAT DISCRIMINATION WAS THE
<u>TRUE REASON FOR HER TERMINATION</u>**

Because Chow has established a prima facie case, the Court must consider whether the parties have met their burdens at the second and third steps of the <u>McDonnell Douglas</u> test.  Tommy Footwear has articulated a legitimate, non-discriminatory reason for its decision to terminate Chow's employment:  her position was eliminated as part of a reorganization of the Product Department to better serve Tommy Footwear's business needs.  (Def. Br. at 11-12; Del Priore Aff. ¶¶ 3-13, 16; Woodworth Aff. ¶¶ 2-8)  Therefore, the burden shifts to Chow to offer evidence from which a reasonable jury could conclude that Tommy Footwear's proffered reason is not true – <u>i.e.</u>, Chow's position was not actually eliminated – "<u>and</u> that discrimination was the real reason" for her termination.  <u>Quaratino</u>, 71 F.3d at 64 (emphasis in original).  Chow has not met her burden.

**1.   There Is Evidence From Which A
<u>Jury Could Find That The Proffered Reason Is Not True</u>**

As discussed above, there is a genuine factual dispute as to whether Chow's Product Line Manager position was truly eliminated or whether it was essentially replaced by one of the new Director or Product Coordinator positions.  Therefore, Chow has met her burden with respect to offering evidence from which a jury could find that Tommy Footwear's stated reason for terminating her employment is not true.  <u>See, e.g.</u>, <u>McFadden-Peel v. Staten Island Cable</u>, 873 F. Supp. 757, 764 (E.D.N.Y. 1994) (in age discrimination case, finding evidence that proffered reason was not true where plaintiff's duties were reassigned to younger employees and plaintiff was not offered an alternative position).

17

**2.      No Reasonable Jury Could Find That
<u>The True Reason Was Discrimination</u>**

Chow must also offer evidence from which a reasonable jury could find

that pregnancy discrimination was the real reason for her termination.  <u>Quaratino</u>, 71 F.3d

at 64; <u>Ganzy v. Sun Chemical Corp.</u>, No. 06-Civ.-3424(FB)(MDG), 2008 WL 3286262,

at *8 (E.D.N.Y. Aug. 8, 2008) ("[E]stablishing that the employer's proffered reason is

false is not enough; the plaintiff must show '<u>both</u> that the reason was false, <u>and</u> that

discrimination was the real reason.'" (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509

U.S. 502, 515 (1993))).  To meet this burden, Chow relies on the same evidence that

establishes her prima facie case.  (Pltf. Br. at 4)

The Supreme Court has held that a showing of pretext, combined with an

employee's prima facie case, <u>may</u> be sufficient to meet the plaintiff's burden of

proffering evidence from which a jury could find that the true reason for her termination

was discrimination.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147, 120

S.Ct. 2097, 2108-09 (2000).  However, it has also made clear that "such a showing by the

plaintiff will [not] <u>always</u> be adequate to sustain a jury's finding of liability."  <u>Id.</u>, 530

U.S. at 148-49, 120 S.Ct. at 2109 (emphasis in original).  The question for the Court is

whether, considering the "entire record . . . [Chow could satisfy h[er] 'ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against . . .

[her].'"  <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90 (2d Cir. 2000).  Summary judgment for

the employer is still appropriate where "the plaintiff [has] created only a weak issue of

fact as to whether the employer's reason was untrue and there [i]s abundant and

uncontroverted independent evidence that no discrimination had occurred."  <u>Reeves</u>, 530

U.S. at 148-49, 120 S.Ct. at 2109.

This is just such a case.  Chow's prima facie case is weak, as is her showing that Tommy Footwear's stated reason for terminating her employment is untrue. It is undisputed that Del Priore created new positions to take over the Product Line Managers' duties; that both of the new positions differed from the Product Line Manager position in some ways; and that Woodworth and Del Priore had legitimate business reasons for reorganizing the Product Department.  (Del Priore Aff. ¶¶ 3-13, 16; Woodworth Aff. ¶¶ 2-8)  The only question is whether either of the new positions was similar enough to the old Product Line Manager position that it could fairly be characterized as a replacement of the Product Line Manager position.  This is not a case where there is evidence that the proffered reason for the plaintiff's termination was completely fictional, or where the plaintiff's evidence provides some independent reason to believe that the defendant's motive was discriminatory.  Cf. Quaratino, 71 F.3d at 61 (defendant claimed that plaintiff's position was eliminated, but summary judgment was unwarranted because, inter alia, plaintiff presented evidence that a supervisor had asked her at her performance evaluation "Are you really serious about your career, or are you just going to go home and get pregnant?," and another supervisor's immediate response to learning that she was pregnant was "an expletive," after which the supervisor became more critical of her work ); Kerzer, 156 F.3d at 402-03 (in showing that defendant's claim that it did not need plaintiff's services was untrue, plaintiff offered evidence that, inter alia, the company president's commented that (i) an employer can "get away with discharging a pregnant employee by contending that the position was eliminated" and (ii) her pregnancy was a sign that she was lazy).

Other than her weak prima facie case and the possibility that a jury could find that her position was essentially replaced, Chow has no evidence of discrimination. In contrast, Tommy Footwear has strong evidence that Chow's employment was not terminated due to pregnancy discrimination.  It is undisputed that Del Priore did not single Chow out for termination:  Del Priore also eliminated the second Women's Product Line Manager position and terminated the employment of the individual who held that position, Angela Son, who was not pregnant.  (Del Priore Aff. ¶¶ 20-21, 26) The fact that Son and Chow were treated in the same manner weighs strongly against finding that pregnancy discrimination was the true reason for Chow's termination.  <u>See Jessamy</u>, 292 F. Supp. 2d at 516 (holding that plaintiff had not established even a prima facie case in light of evidence that an employee outside the plaintiff's protected class was treated in an identical manner with respect to the job elimination that resulted in plaintiff's discharge).

Further, Del Priore supervised another pregnant employee in the Product Department in June 2004, and did not terminate that individual's employment as part of the reorganization.  (Def. Rule 56.1 Stat. ¶ 22; Pltf. Rule 56.1 Reply ¶ 22; Del Priore Aff. ¶ 17)  This fact also weighs strongly against finding that Del Priore was motivated by bias against pregnant women or working mothers.  <u>See Campbell</u>, 2005 WL 839001, at *8 (fact that another pregnant employee was not terminated at the same time as plaintiff weighed against finding that a reasonable jury could infer a discriminatory motive); <u>Visco</u>, 957 F. Supp. at 388 (fact that other pregnant employees were not discharged

weighed against finding that defendants' proffered reason for terminating plaintiff was pretext for pregnancy discrimination).[8]

The additional evidence in the record provides no basis to conclude that Del Priore harbored any discriminatory animus.[9]  Chow relies heavily on the temporal proximity between Del Priore's approving her maternity leave and Del Priore's decision to eliminate the Product Line Manager positions and terminate Chow's employment. However, the timing of Chow's termination is also consistent with the evidence that Del Priore's mandate upon starting in her new position was to continue the reorganization of the department.  Further, Chow conceded at her deposition that she "had no reason to believe that [Del Priore] was hostile to people who were either married or had children." (Chow Dep. 134:5-8)  Del Priore was herself a working mother, with three children under the age of seven, and there is no evidence that she expressed negative views of being a working mother during the several discussions she had with Chow on the subject.  (Del Priore Aff. ¶ 2; Chow Dep. 109:22-111:8)

---

[8]  Chow also argues that discriminatory motive can be inferred from the facially neutral fact that Del Priore did not discuss with Chow her plans concerning who would take on Chow's responsibilities during Chow's maternity leave.  (Chow Aff. ¶¶ 10-12)  However, a jury could easily infer that Del Priore was silent on this issue because she saw no reason to discuss her reorganization plans with Chow before they were final.  It would be pure speculation to choose one explanation for Del Priore's behavior over the other.  Cameron, 335 F.3d at 65.

[9]  There is also no evidence that the individuals involved in approving Del Priore's decision, Richie Woodworth and the Human Resources Service Group, had the "anti-children" bias that Chow alleges.  To the contrary, the only evidence concerning Woodworth is that he had recently selected Del Priore, who he knew to have three children under the age of seven, to lead the Product Department.  (Woodworth Aff. ¶ 5) There is no evidence concerning the Human Resources Service Group.

Viewing the evidence as a whole, no reasonable jury could conclude that Chow was fired <u>because</u> she was pregnant, or that the new Director and Product Coordinator positions were filled by others <u>because</u> they were not pregnant.  Therefore, Tommy Footwear is entitled to judgment as a matter of law as to Chow's pregnancy discrimination claims.  <u>See</u> <u>Norton v. Sam's Club</u>, 145 F.3d 114, 119 (2d Cir. 1998) (defendant was entitled to judgment as a matter of law because plaintiff presented "an <u>extremely</u> weak prima facie case" with no direct evidence of discrimination, and "even if the jury could find that the explanation . . . for . . . [the plaintiff's termination] was absurd," the "showing of pretext" did not "in itself . . . implicate discrimination"); <u>Norville v. Staten Island University Hospital</u>, 196 F.3d 89, 98 (2d Cir. 1999) (affirming summary judgment for defendant – even where plaintiff had demonstrated a fact issue, "albeit barely, . . . [concerning] pretext" – because nothing in the record "indicate[d] that . . . [the younger applicant was] selected . . . <u>because</u> he was the younger applicant").  To hold otherwise would be in effect to hold that Chow is entitled to greater job protection than Angela Son merely by virtue of her pregnancy, whereas the law requires only that pregnant employees "not [be] treated any differently than other employees."  <u>Infante</u>, 2006 WL 44172, at *8 (granting summary judgment because otherwise, "the Court would be essentially holding that pregnant women are entitled to far greater job protection than any other employees.  This result is beyond the scope of [Title VII]. . . ."); <u>Dimino v. NYC Transit Auth.</u>, 64 F. Supp. 2d 136, 156 (E.D.N.Y. 1999) ("It has been repeatedly affirmed that . . . [Title VII as amended by the Pregnancy Discrimination Act] does not require the creation of special programs for pregnant women; nor does it mandate any special treatment.").

**D.**     **CHOW'S CONTRACT CLAIM**

Chow also asserts a breach of contract claim (Pltf. Br. at 8-9), arguing that
Tommy Footwear's leave policy gives her a contractual right to return to work from her
maternity leave.  This policy states that "[u]pon return from a Maternity Leave, an
associate will be restored to her original position or an equivalent position. . . ."
(Cisternino Decl. Ex. H)  The leave policy, however, is part of an employee handbook
that expressly disclaims the creation of any contractual rights.  (Supplemental Affidavit
of Denise Lockaby ¶ 4; Lockaby Ex. 3)  Further, Chow concedes that she was "an at-will
employee" and "could be terminated at any time."  (Pltf. Br. at 8)  These facts are fatal to
Chow's contract claim.

"It is well settled under New York law that a disclaimer in an employment
handbook indicating that it is not a contract precludes a breach of contract claim."  White
v. Home Depot Inc., No. 04-Civ.-401, 2008 WL 189865, at *8 (E.D.N.Y. Jan. 17, 2008)
(citing cases and holding that the plaintiff was "barred from bringing a breach of contract
claim based on" the defendant's "Employee Handbook" where he "signed a disclaimer
explicitly stating that the Employee Handbook is not a contract").  The disclaimer in
Tommy Footwear's employee handbook is titled "Disclaimer of Employment Contract"
and states:  "[T]he provisions of this handbook do not represent contractual terms of
employment. . . .  Nothing in this manual nor any other policy or procedure of the
company shall be construed as creating any obligation on the company or right of
employment."  (Lockaby Supp. Aff. Ex. 3)  This clear disclaimer bars any contract claim
based on Tommy Footwear's maternity leave policy.

In addition, Chow's claim – that she was entitled to return to work for
Tommy Footwear – is in effect a claim that her termination constituted the breach of a

contractual right.  Under New York law, an at-will employee such as Chow may assert

such a claim only if, inter alia, "the employer made the employee aware of an express

written policy limiting its right of discharge."  Hargett v. Metropolitan Transit Auth., 552

F. Supp. 2d 393, 402-403 (S.D.N.Y. 2008) (McMahon, J.).  Tommy Footwear's leave

policy did not "express[ly] . . . limit . . . its right of discharge" with respect to Chow.  Id.

To the contrary, the disclaimer in Tommy Footwear's employee handbook states that "the

company is free to terminate the employment of any associate at any time for any reason

not prohibited by law," and that Tommy Footwear could change the policies in the

handbook.  (Lockaby Ex. 3)   Courts have held that similar disclaimers preclude a finding

that an employer has expressly limited its right to discharge its employees.  See, e.g.,

Soto v. Federal Express Corp., No. 06-Civ.-5413(SLT)(KAM), 2008 WL 305017, at *6

(E.D.N.Y. Feb. 1, 2008) (finding that the "unambiguous disclaimers" in the employee

handbook at issue "demonstrate[d] that Defendant did not expressly limit its right to

terminate Plaintiff" and that the plaintiff could not assert a breach of contract claim); De

Petris v. Union Settlement Ass'n, Inc., 86 N.Y.2d 406, 410-11 (1995) (holding that the

employer's manual did not give rise to contractual rights in part because the employer

"expressly reserved the right to revise the Manual"); Gomariz v. Foote, Cone & Belding

Communications, Inc., 228 A.D.2d 316, 317, 644 N.Y.S.2d 224, 225 (1st Dep't 1996)

("The handbook prominently stated, in an explicit disclaimer, that it did not constitute an

employee contract, and therefore did not place an express contractual limitation upon the

employer's unfettered right to terminate that at-will employment.")

Because Chow is precluded from asserting a breach of contract claim

based on Tommy Footwear's leave policy, Tommy Footwear is entitled to summary

judgment on that claim.

## CONCLUSION

For the foregoing reasons, Tommy Footwear's motion for summary

judgment (Docket No. 9) is GRANTED.


Dated: New York, New York
       January 27, 2009

                                  SO ORDERED.

                                  _____
                                  Paul G. Gardephe
                                  United States District Judge